UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AFS/IBEX, a division of METABANK,       :
         :
        Plaintiff,       :
         :
        v.       :    **DECISION & ORDER**
         :    18-CV-0631 (WFK)
AEGIS MANAGING AGENCY LIMITED,       :
as Managing Agent of SYNDICATE 1225       :
AT LLOYD'S, CRC INSURANCE SERVICES, INC.,       :
and TRANSPORTATION WRITERS, INC.,       :
         :
        Defendants.       :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

AFS/IBEX ("Plaintiff") brings this action against AEGIS Managing Agency Limited, CRC Insurance Services, Inc., and Transportation Writers, Inc. ("Defendants") for breach of contract under New York Law. Plaintiff paid Defendants $2,548,200.00 in insurance premiums under a policy that was terminated before the full term. Plaintiff now alleges Defendants owe Plaintiff $1,643,343.02 in unearned premiums. Defendants argue all premiums were earned under the terms of the policy and therefore they are entitled to retain all premiums paid. Both parties now move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment. For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED and Defendants' motion for summary judgment is DENIED.

## BACKGROUND[1]

Plaintiff initiated this lawsuit on January 30, 2018. ECF No. 1. The operative complaint was filed on February 20, 2019. ECF No. 41. On August 12, 2019 the parties filed cross-motions for summary judgment. ECF Nos. 48, 49.

Plaintiff is an insurance premium finance company. Stip. ¶ 15. Defendant AEGIS is an

---

[1] The facts are drawn from the parties' joint stipulation of material facts ("Stip."), ECF No. 48−4, Defendants' Local Rule 56.1 Statement ("Defs.' St."), ECF No. 49−1, and Plaintiff's Response to Defendants' Local Rule 56.1 Statement ("Pl.'s Resp."), ECF No. 49−2. Citations to a party's Rule 56.1 statement and memorandum incorporate by reference the documents cited therein. The Court takes to be true facts stated in a party's Rule 56.1 statement supported by testimonial or documentary evidence and denied by the other party with only a conclusory statement without citation to conflicting testimonial or documentary evidence. *See* E.D.N.Y. Local Rule 56.1(c), (d).

excess line insurance carrier and broker. *Id.* ¶ 16. In 2016, Red Hook, a construction company doing business in New York, sought commercial insurance from Defendant AEGIS. *Id.* ¶¶ 19–22. Defendant AEGIS issued a commercial general liability policy to Red Hook (the "AEGIS Policy"). *Id.* The AEGIS Policy provided liability limits of $2,000,000.00 per occurrence, subject to a $50,000.00 deductible. Defs.' St. ¶ 21. Red Hook paid an annual premium of $2,000,000.00 with 25% earned at inception. *Id.* ¶ 23. The AEGIS Policy designated New York as the choice of law forum. Stip. ¶ 21.

In order to pay the $2,000,000.00 premium, Red Hook sought and obtained a loan from Plaintiff, pursuant to two premium finance agreements which were executed between Red Hook and Plaintiff on October 18, 2016 and March 27, 2017 respectively. *Id.* ¶ 22. Pursuant to these agreements, Plaintiff paid $2,548,200.00 to Defendants on behalf of Red Hook. *Id.* Red Hook ceased operations during the term of the AEGIS Policy and defaulted on repayment of the premiums owed to Plaintiff.[2] *Id.* ¶¶ 23–24. When Red Hook defaulted, the remaining balance due on the loan was $1,783,788.16. *Id.* On August 21, 2017, Plaintiff authorized cancellation of the AEGIS Policy, on behalf of Red Hook, and the AEGIS Policy officially terminated on August 23, 2017. *Id.* ¶¶ 26–27. While the AEGIS Policy was in effect, i.e. prior to the August 23, 2017 date of termination, Red Hook made several valid claims for losses or occurrences. *Id.* ¶ 30.

Defendants have retained all premiums financed by Plaintiff and paid on behalf of Red Hook. *Id.* ¶ 28. Plaintiff alleges there are unearned premiums which, when computed on a pro

---

[2] The premium finance agreements between Plaintiff and Red Hook provide that, "[Red Hook] assigns [Plaintiff] as security for the total amount payable in this Agreement any of the above [which include all unearned premiums] which may become payable under the insurance policies." Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (Pl.'s Mem.") at 3. Accordingly, the Court finds, per the premium finance agreement, Plaintiff is entitled to any interest owed to Red Hook under the AEGIS Policy.

rata basis as of the date of cancellation, amount to $1,643,343.02. *Id.* ¶ 29.  Plaintiff alleges Defendants are required to return all unearned premiums to Plaintiff on a pro rata basis according to the terms of the AEGIS Policy.  Defendants argue, it fully earned all paid premiums.  The dispute concerns the interpretation of the following two clauses from the AEGIS Policy (hereinafter, the "Payment Clause" and the "Cancellation Clause," respectively).

> **PAYMENT TERMS**
>
> The (Re)Insured undertakes that premium will be paid in full to Underwriters within 30 days of inception of this policy (or, in respect of installment premiums, when due).  If the premium due under this policy has not been so paid to Underwriters by the 30th day from the inception of this policy, and (in respect of installment premiums, by the date that they are due) Underwriters shall have the right to cancel this policy by notifying the (Re)Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.[3]
>
> ***
>
> **CANCELLATION**
>
> If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

Plaintiff's Motion for Summary Judgment, Exhibit A, ECF No. 48–4 ("Ex. A").

Plaintiff argues the Cancellation Clause governs the instant dispute, requiring Defendants to return the pro rata share of all unearned premiums to Plaintiff.  Defendants argue the Payment Clause governs and that under that clause, Defendants have earned all premiums and thus need not return any sum to Plaintiffs.

## STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[3] The parties agree the term "Underwriter[s]" in this clause refers to Defendant AEGIS, the insurer.

R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323. Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250 (internal citations omitted).

Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each part's motion must be

examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121 (internal citation omitted).

## DISCUSSION

Because jurisdiction in this case is premised on diversity of the parties' citizenship, and the parties agree the contract at issue designated New York as the choice of law forum, this Court applies the law of New York. *Krauss v. Manhattan Life Ins. Co. of N.Y.*, 643 F.2d 98, 100 (2d Cir. 1981); *Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 363 (E.D.N.Y. 2012).

Under New York law, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White v. Continental Cas. Co.*, 9 N.Y.3d 264 (2007); *In re Estates of Covert*, 97 N.Y.2d 68 (2001) ("Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.") (quoting *Hartol Prods. Corp. v. Prudential Ins. Co. of Am.*, 290 N.Y. 44 (1943))). Insurance contracts "must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118 (2011).

In interpreting the agreement at issue, principles of contract interpretation instruct the Court to resolve all ambiguities against the drafter and in favor of the insured. *Dworkwitz v. The New York Cent. R. R. Co.*, 230 N. Y. 188, 192 (1920) ("While, of course, the rules are well settled that an ambiguity in an instrument must be resolved against the one who prepared it. . ."); *Nat'l Screen Serv. Corp. v. United States Fidelity & Guar. Co.*, 364 F.2d 275, 277 (2d Cir. 1966)

("The relevant case law in New York evinces a very strong tendency to favor the insured when construing words of ambiguous meaning in insurance contracts.").

> **I.    The "Cancellation Clause" not the "Payment Clause" Governs This Dispute**

The plain, unambiguous language of the contract makes clear the Cancellation Clause, not the Payment Clause, governs the parties' rights to the premiums. The two clauses come from distinct parts of the AEGIS Policy. The Payments Clause describes the obligation of the insured to pay the premiums to the insurer within thirty days of the inception of the policy. The Cancellation Clause describes the rights of the parties in the event the agreement is terminated or cancelled.

A plain reading of the Payment Clause, taken in the context of the entire agreement, makes clear that it only applies where the insured has failed to pay the entirety of the premiums owed within thirty days of the inception of the agreement. *See* Ex. A. ("[i]f the premium under this policy has not been so paid . . . [the insurer] shall have the right to cancel this policy by notifying the [insured] . . ."). Plaintiff in this case, on behalf of the insured, paid the entire $2,000,000.00 premium to Defendants, within thirty days of the inception of the agreement. Having done so, the Payment Clause does not apply. In *INAC Corp. v. Underwrites at Lloyd's*, a Texas court, applying common principles of contract interpretation, found a similar clause limited to this application in the same circumstances. *See* 56 S.W.3d 242 (Ct. App. 14th Dis. 2001) ( "The only reasonable interpretation of this section is that the third sentence applies only to cancellations by the [insurers] for nonpayment of premium. The [insurer] seeks to apply the third sentence [of the section] to a cancellation that was not made by the [insurer]. We reject this argument because its contrary to the unambiguous language of [the clause].")

A common sense reading of the AEGIS Policy makes clear the Cancellation Clause, not

the Payment Clause, governs the obligations of the parties in the circumstances of this case. The Cancellation Clause states, "If this policy is canceled, [insurer] will send the [insured] any premium refund due. If [insurer] cancel[s], the refund will be pro rata. If the first [insured] cancels, the refund may be less than pro rata." The only reasonable, unambiguous interpretation of the AEGIS Policy is that the Cancellation Clause governs the rights of parties generally when the contract is cancelled, whereas the Payments Clause governs specifically the situation in which the insurer cancels the contract because of the insured's failure to pay the premiums. Because Plaintiff cancelled the agreement when Red Hook ceased operations, the Cancellation Clause applies.

## II. Plaintiff is Entitled to the Pro Rata Share of all Unearned Premiums

Having found the Cancellation Clause governs, Plaintiff is entitled to a refund of any unearned premiums. Plaintiff paid $2,548,200.00 to Defendants in premiums. The terms of the AEGIS Policy state 25% of the premiums were earned by Defendants at inception of the agreement with the remainder to be earned over the course of the life of the Policy. Because the AEGIS Policy was terminated early, Defendants had not yet *earned* all premiums paid to it. To determine the amount of unearned premiums due back to Plaintiff the Court looks to the second and third sentences of the Cancellation Clause, which read, "[i]f [insurer] cancel[s], the refund will be pro rata. If the first [insured] cancels, the refund may be less than pro rata."

Here, it is clear Plaintiff cancelled the contract on behalf of Red Hook. Therefore, the Cancellation Clause instructs, the "refund may be less than pro rata." Whether the amount due to Plaintiff is a pro rata share of the unearned premiums or some lesser amount is governed by New York Banking Law § 576 (f): Cancellation of Insurance Contract Upon Default. Section 576 reads, "The insurer or insurers within a reasonable time not to exceed sixty days after the

effective date of cancellation, shall *return whatever gross unearned premiums are due under the insurance contract or contracts on a pro rata basis* to the premium finance agency for the benefit of the insured or insureds. However, *upon such cancellation the insurer or insurers shall be entitled to retain a minimum earned premium on the policy of ten percent of the gross premium or sixty dollars, whichever is greater*." N.Y. Banking Law § 576 (McKinney) (emphasis added).

Because the AEGIS Policy made clear that 25% of the premium was earned at inception and the remaining amount continued to be earned over the course of the policy's term prior to cancellation, Defendants earned more than 10% of the premiums. Because Defendants will retain more than 10% of the premiums paid to them, Plaintiffs are entitled to the pro rata share of all unearned premiums. The parties agree the pro rata share of all unearned premiums is $1,643,343.02. Stip. ¶ 29. Under the terms of the AEGIS Policy, and the relevant section of the New York Banking Law, Plaintiff is thus entitled to that $1,643,343.02 of unearned premiums and Defendants are entitled to retain $904,856.98, constituting 36% of the premium paid and all of the premiums earned by the Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff has established it is entitled to $1,643,343.02, the pro rata share of unearned premiums under the AEGIS Policy. Accordingly, this Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendants' motion for summary judgment. Plaintiff is ordered to submit on ECF a proposed judgment, consistent with this opinion, within 10 days of the entry of this decision, and Defendants shall file any objections thereto within 10 days thereafter.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2021
      Brooklyn, New York